IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOANNA O. EASTERLY,

    Plaintiff,

    v.

DEPARTMENT OF THE ARMY, et al.,

    Defendants.

No. CIV S-08-3038 JAM DAD PS

ORDER AND

FINDINGS & RECOMMENDATIONS

_____/

    This matter came before the court on August 21, 2009 for hearing of defendants' motion to dismiss plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(A) on the ground that the allegations of poverty in plaintiff's application to proceed in forma pauperis are untrue. Plaintiff Joanna O. Easterly, who is proceeding pro se, appeared telephonically on her own behalf. Lynn Trinka Ernce, Esq. appeared for defendants. After hearing the parties with respect to plaintiff's in forma pauperis application, the undersigned continued defendants' motion to September 11, 2009, for further hearing in conjunction with defendants' motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

    On September 11, 2009, plaintiff Easterly appeared telephonically on her own behalf, and Lynn Trinka Ernce appeared for defendants. Oral argument was heard, and the motions were taken under submission.

1

For the reasons set forth below, the undersigned now recommends that both motions be granted and that this case be dismissed with prejudice.

PLAINTIFF'S CLAIMS

On December 15, 2008, plaintiff commenced this action by filing a complaint alleging one claim of racial discrimination and one claim of retaliation for having filed an EEO complaint about the racial discrimination. Both claims are based on Title VII and the Fourteenth Amendment. The named defendants are the Department of the Army and Pete Geren, Secretary of the Army. The case was assigned to United States District Judge Frank C. Damrell, Jr. and United States Magistrate Judge Gregory G. Hollows.

In her first claim, plaintiff alleges that race discrimination occurred on November 4, 2005, as follows. Plaintiff's supervisor, Lieutenant Colonel Sonja Banowetz (Banowetz), remarked that she had stubbed her toe and it was "black and blue as a niggertoe," and then she giggled and said her husband had told her she had better stop using the word "nigger." Plaintiff, was shocked and offended. She confronted Banowetz in private, but Banowetz responded with hostility and, pointing to her name tag, told plaintiff to make sure she spelled "Banowetz" correctly when she went to EEO. Banowetz had previously made offensive racial comments directed at plaintiff and other African American personnel. Banowetz referred to other African American personnel as plaintiff's uncle, brother, or sister, and she used the term "you people" in reference to plaintiff and other African American personnel. Banowetz also remarked that she thought she saw some of plaintiff's relatives when Hurricane Katrina victims were shown on the news, and on one occasion Banowetz called out in a loud voice when plaintiff arrived at an off-site Christmas party that all sharp objects should be hidden because a criminal had just walked in. Plaintiff felt that all such comments were meant to show contempt and hatred toward plaintiff as an African American. Plaintiff also felt that a supervisor should have known that use of the word "niggertoe" was offensive and disrespectful. Plaintiff rejected Banowetz's explanation that in her family Brazil nuts are referred to as "niggertoes." Plaintiff believes that the defendants

tried to cover up Banowetz's mistake and discriminated against plaintiff by their callous disregard for plaintiff's right to work in an environment that is not injurious to her physical and mental health.  Plaintiff continues to take prescribed medication for depression caused by racial discrimination.  She seeks damages in the amount of $500,000, plus interest and costs.

In her second claim, plaintiff contends that she suffered retaliation for having complained to EEO about Banowetz's discriminatory remark.  In this regard, plaintiff alleges as follows.  Banowetz knew that plaintiff had a flex schedule and usually worked from 7:00 a.m. to 3:30 p.m. Shortly after plaintiff met with Banowetz about her discriminatory remark, Banowetz informed plaintiff that she would be transferred to another section because Banowetz needed someone to work from 8:00 a.m. to 5:00 p.m.  When plaintiff responded that she had a flex schedule approved by the Chief of Staff, Banowetz went to the Human Resources office, removed plaintiff's approved flex schedule from the file, destroyed the document in plaintiff's presence, and laughed about it.  In December 2005, plaintiff was advised that the General's staff was being reorganized and plaintiff was being reassigned because she did not have a security clearance and the position plaintiff encumbered was slated for a state employee.  Plaintiff perceived the reassignment as retaliatory because (1) it occurred right after she filed her EEO complaint; (2) she had never had a security clearance and would not have been placed in the Command Section if a security clearance had been needed; and (3) Banowetz replaced plaintiff with another technician who, like plaintiff, was not on state active duty and was not a state civil service employee with a security clearance.  The physical and mental emotional distress plaintiff suffered as a result of the retaliatory reassignment led to her medical discharge and loss of her job and career.  She seeks $500,000 in damages, plus interest and costs.

On April 8, 2009, Magistrate Judge Hollows found that plaintiff's in forma pauperis affidavit shows inability to prepay fees and costs or give security for them.  Magistrate Judge Hollows was unable to determine on the record at that time whether plaintiff's allegation of poverty was untrue or whether the action was frivolous or malicious or failed to state a claim

on which relief may be granted. Judge Hollows reserved any decision on those issues until the record was sufficiently developed, but he granted plaintiff's motion to proceed in forma pauperis and authorized service of the complaint by the United States Marshal.

After defendants were served with process, defendants' counsel filed a notice of related cases. The district judge found this case to be related to <u>Easterly v. Department of the Army, et al.</u>, case No. CIV S-07-1259 JAM DAD PS. After this case was reassigned, defendants filed their motions to dismiss.

DEFENDANTS' MOTION TO DISMISS PURSUANT TO 28 U.S.C. § 1915(e)(2)

Defendants move to dismiss plaintiff's complaint with prejudice on the ground that the allegations of poverty contained in plaintiff's application to proceed in forma pauperis are untrue. In particular, defendants argue that it is not true that plaintiff did not receive any disability payments in the twelve months preceding the filing of the in forma pauperis application.

I. <u>Legal Standards</u>

"The clerk of each district court shall require the parties initiating any civil action, suit or proceeding in such court . . . to pay a filing fee of $350 . . . ." 28 U.S.C. § 1914(a). However,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1).

The determination of whether a plaintiff is indigent and therefore unable to pay the filing fee falls within the court's sound discretion. <u>California Men's Colony v. Rowland</u>, 939 F.2d 854, 858 (9th Cir. 1991), <u>reversed on other grounds</u>, 506 U.S. 194 (1993). A party need not be completely destitute to be eligible for in forma pauperis IFP status. <u>Adkins v. E.I. DuPont de</u>

4

Nemours & Co., 335 U.S. 331, 339-40 (1948). The affidavit supporting an IFP motion is sufficient if it alleges facts showing that the plaintiff, because of poverty, cannot pay or give security for court costs and still be able to provide himself and his dependents with "the necessities of life." Id. at 339.

Notwithstanding any filing fee or partial filing fee that may have been paid, "the court **shall dismiss the case** at any time if the court determines that . . . the allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A) (emphasis added).[1] See Igbinadolor v. TiVo, Inc., ___ F. Supp. 2d ___, ___, No. 1:08-CV-2580-RWS, 2009 WL 3253946, at *1 (N.D. Ga. Oct. 6, 2009) ("Dismissal of the case is required upon a showing that the allegation of poverty is untrue," and "[t]he only discretion the court has is whether to dismiss the case with or without prejudice."); Oquendo v. Geren, 594 F. Supp. 2d 9, 11 (D. D.C. 2009) ("[D]ismissal is mandatory in the face of untrue allegations of poverty."); Berry v. Locke, No. 1:08cv697 (JCC), 2009 WL 1587315, at *5 (E.D. Va. June 5, 2009) ("Courts that have considered [28 U.S.C. § 1915(e)(2)] have held that dismissal is mandatory when a court finds that allegations of poverty in an IFP application are untrue; the court also has the discretion to dismiss the case with prejudice."); Bell v. Dobbs Int'l Serv., 6 F. Supp. 2d 863, 864 (E.D. Mo. 1998) ("As is explicitly addressed in the statutory language, the fact that plaintiff paid the filing fee after her IFP application was denied does not preclude application of the provision to dismiss her case based on a false allegation of poverty."). Cf. Calhoun v. Hook, ___ F. Supp. 2d ___, ___, No. C08-5697 RJB/KLS, 2009 WL 3187866, at *5 (W.D. Wash. Sept. 30, 2009) (denying motion to revoke a civil detainee's IFP status where there was no sign of bad faith or willful deceit with regard to his wife's income and the unreported additional income of $300 would not have affected the court's determination that the plaintiff was entitled to proceed IFP).

---

[1] Amendments made to 28 U.S.C. § 1915 in 1996 included the substitution of the mandatory "shall" for the permissive "may" in regard to the court's authority and responsibility to dismiss a case when the plaintiff's allegation of poverty is found to be untrue. Bell v. Dobbs Int'l Serv., 6 F. Supp. 2d 863, 864 (E.D. Mo. 1998).

Where the applicant has knowingly provided inaccurate information on his or her in forma pauperis application, the dismissal may be with prejudice. Thomas v. Gen'l Motors Acceptance Corp., 288 F.3d 305, 306 (7th Cir. 2002); Attwood v. Singletary, 105 F.3d 610, 612-13 (11th Cir. 1997); Romesburg v. Trickey, 908 F.2d 258, 260 (8th Cir. 1990); Thompson v. Carlson, 705 F.2d 868, 869 (6th Cir. 1983). "[W]here one attempts to 'defraud the government' with a perjurious IFP affidavit, dismissal with prejudice may be the only effective sanction." Mullins v. Hallmark Data Systems, LLC, 511 F. Supp. 2d 928, 940 (N.D. Ill. 2007) (quoting Thomas, 288 F.3d at 306-07).

II. Application of the Standards

Here, plaintiff completed an IFP application form on December 15, 2008, when she filed her complaint. (Doc. No. 2.) Plaintiff was required to answer under penalty of perjury a series of questions about employment and money received from all sources in the previous 12 months. Plaintiff indicated in response to Question 2 that she was not currently employed, but failed to state the date of her last employment, the amount of her salary and wages and the pay period, and the name and address of her employer. In response to Question 3, plaintiff indicated that she received money from "Business, profession or other self-employment" but did not describe the source of the money or state the amount received and what she expected to continue to receive. Plaintiff marked boxes indicating that she did not receive any pensions, annuities, life insurance payments, disability, or workers compensation payments. She filled in a blank line indicating that she had approximately $230.00 in cash or checking or saving accounts, and did not own any property of value. She signed the form under penalty of perjury.

Defendant informs the court that plaintiff's employment with the California National Guard ended effective May 9, 2008, when she was granted disability retirement, and in June she began receiving $926 per month in interim disability retirement payments. She received that amount each month until her claim was adjudicated in October 2008, at which time her monthly disability payment was increased to $1,088 per month. She received a lump sum

payment for the difference between her interim payments of $926 and her adjudicated payments of $1,088 for the months between May and October 2008. In addition, plaintiff was receiving $2,800 per month in disability payments from the Veterans Administration and about $850 per month in disability from the Department of Defense.

Thus, plaintiff appears to have received employment income in an unknown amount prior to May 2008, but did not report any amount of employment income from December 15, 2007 to May 2008, the twelve-month period prior to the date of the IFP application. More significantly, she received disability income of approximately $3,650 per month from the Veterans Administration and the Department of Defense, as well as $926 per month from the California National Guard from June through September and $1,088 per month starting in October 2008. She also received a lump sum from the California National Guard for the difference between the interim payment amount and the adjudicated payment amount.

The undersigned finds that plaintiff omitted significant amounts of income from her IFP application. Her omission of any information about employment income between December 15, 2007 and December 15, 2008, and her denial of receiving any disability income within that period of time are clearly material omissions. If plaintiff had made the proper income disclosures in her IFP application, as she was obligated to do, the undersigned would have denied her application for IFP status and is confident that the magistrate judge then assigned to the case would have done so as well.

Plaintiff's defense is that she was at the counter filing her complaint and the clerk asked her if she wanted to apply for the fee waiver.[2] Plaintiff states that she "agreed" and completed the application "in a rush." She was "very high stressed," "did not pay attention to the questions on the application," "just wanted to get [her] complaint filed," and "was not thinking clearly on that day." (Pl.'s Opp'n to Mot. to Dismiss Pursuant to 28 U.S.C. § 1915(e)(2) at 1-2.)

---

[2] If plaintiff had offered to pay the filing fee, it appears unlikely that the clerk would have asked plaintiff whether she wanted to apply for a fee waiver.

Next, plaintiff claims that all the lump sum amounts she received "went directly to repayment of debts." (Id. at 2.) Plaintiff takes issue with defendant's assertion that plaintiff's bank account showed $14,000 in her account in December 2008 and argues that her account balance was only about $9,609.97 on October 31, 2008. Plaintiff's arguments do not demonstrate poverty, and her assertion that she did not pay attention to the questions is unpersuasive with regard to a legal document that contains "penalty of perjury" warnings at the beginning and at the end of the numbered questions. Obviously, plaintiff read the questions sufficiently to answer "yes" to some and "no" to others.

Even if plaintiff could be considered to have acted in good faith, her allegation of poverty was in fact untrue. If the IFP application had contained accurate information, the application would have been denied. Accordingly, the court is required to dismiss this case.

After careful consideration of the entire file, the undersigned will recommend that dismissal of the case be with prejudice. First, plaintiff's explanation for her false allegation of poverty is unpersuasive. Second, it would be futile for plaintiff to file a new, paid action after the expiration of the statute of limitations. Third, the undersigned has considered defendants' companion motion to dismiss, as set forth below, and finds that the pleading fails to state a claim upon which relief may be granted.

DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendants seek dismissal with prejudice of defendant Department of the Army and unnamed defendants DOES 1-50. In this regard, defendants argue that defendant Pete Geren, Secretary of the Army, is the only proper defendant in the case. This argument appears to be unopposed by plaintiff.

Defendants also seek dismissal of both of plaintiff's claims on various grounds. First, defendants argue that plaintiff's allegations fail to state a claim of racial disparate treatment or hostile work environment because the comments of plaintiff's supervisor do not constitute an adverse employment action and the incidents alleged were not sufficiently severe or pervasive to

alter the conditions of plaintiff's employment and create an abusive work environment. Defendants contend that plaintiff's retaliation claim regarding her transfer to another section of the California National Guard is non-justiciable because the intrinsically military nature of her position as a military technician precludes the court from reviewing this personnel action. In opposition to these arguments, plaintiff argues in a conclusory manner that she suffered an adverse employment action and discrimination should be inferred from the circumstances alleged. Plaintiff argues that her supervisor harassed her and made her work environment uncomfortable and unbearable.

I. Legal Standards

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In general, pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). The court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested

and the plaintiff's complaint necessarily relies on them, and matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

II. Application of the Standards

In an employment discrimination case brought by a federal employee pursuant to Title VII, "the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c). See also Vinieratos v. U.S. Dep't of Air Force, 939 F.2d 762, 772 (9th Cir. 1991) ("Title VII requires that in a civil action alleging employment discrimination by the government, 'the head of the department, agency, or unit, as appropriate, shall be the defendant.'"). In this action, the only proper defendant for plaintiff's claims under Title VII is the Secretary of the Army as head of that department. Defendants' unopposed motion to dismiss defendant Department of the Army should be granted.

The caption of plaintiff's complaint includes defendants "DOES 1-50." The pleading does not include factual allegations against the unnamed defendants, and plaintiff has not opposed defendants' suggestion that the DOE defendants be dismissed. The undersigned finds that the complaint fails to allege facts stating a claim upon which relief could be granted as to any defendant other than defendant Secretary. Moreover, plaintiff did not identify and seek leave to serve any DOE defendant within 120 days after filing her complaint, and such defendants should therefore be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

To the extent that plaintiff has grounded her claims on the Fourteenth Amendment, those claims should be dismissed because the Fourteenth Amendment applies only to actions by a State or state actors. San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 542 n.21 (1987).

Plaintiff alleges racial disparate treatment and hostile work environment based on two remarks by her supervisor: the supervisor's November 2005 reference to her own bruised toe as looking like a "niggertoe" and the supervisor's December 2005 remark at an off-site

holiday party about a criminal entering the room, made in reference to plaintiff. Neither comment was in itself an adverse employment action, and the comments are insufficient to state a claim of hostile work environment. To state such a claim under Title VII, the plaintiff must show that her work environment was "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citation omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview" and is not actionable. Id. "[C]onduct must be extreme to amount to a change in the terms and conditions of employment," lest Title VII become nothing more than "a 'general civility code.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). Occasional or isolated incidents are not enough, and the plaintiff must show a concerted and continuous pattern of harassment. Id. at 787 n.1. Here, plaintiff's allegation of two specific comments and vague allegations of other remarks is insufficient to state a hostile environment claim. For these reasons, plaintiff's first claim fails to state a claim upon which relief may be granted, and therefore defendants' motion to dismiss should be granted.

In her second claim, plaintiff alleges that her transfer out of the Command Section in December 2005 was retaliatory. The protections afforded by Title VII do not apply to military personnel but do apply to civilian employees of the military and to National Guard technicians who are employed in hybrid military-civilian jobs. Mier v. Owens, 57 F.3d 747, 749 (9th Cir. 1995). At the times relevant to this action, plaintiff was so employed. "Historically, [the Ninth Circuit] has restricted its review of military decisions making out of deference 'to the special function of the military in our constitutional structure and in the system of national defense.'" Frey v. California, 982 F.2d 399, 402 (9th Cir. 1993) (quoting Sebra v. Neville, 801 F.2d 1135, 1140-41 (9th Cir. 1986)). See also Gonzalez v. Dep't of Army, 718 F.2d 926, 930 (9th Cir.

1983) (declining to enter into an area of military expertise despite the plaintiff's claim of intentional race discrimination). Even where a claim concerns a decision that is not a traditional military decision, "similar principles apply when Congress or the states take actions affecting the militia." Frey, 982 F.3d at 402.

The Mindes test is the proper standard for determining whether claims brought by National Guard members are reviewable. Christoffersen v. Wash. State Air Nat'l Guard, 855 F.2d 1437, 1440-41 (9th Cir. 1988) (citing Sebra, 801 F.2d at 1141, and Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971)). Under the Mindes test, as modified by the Ninth Circuit,

> "an internal military decision is unreviewable unless the plaintiff alleges (a) a violation of [a recognized constitutional right], a federal statute, or military regulations; and (b) exhaustion of available intraservice remedies. If the plaintiff meets both prerequisites, the trial court must weigh four factors to determine whether review should be granted:
>
> (1) *The nature and strength of the plaintiff's claim . . . .*
> (2) *The potential injury to the plaintiff if review is refused.*
> (3) *The extent of interference with military functions.*
> (4) *The extent to which military discretion or expertise is involved.*"

Christoffersen, 855 F.2d at 1442 (quoting Khalsa v. Weinberger, 779 F.2d 1393, 1398 (9th Cir. 1985) (internal citation omitted)).

In the present case, the undersigned finds that the four factors to be considered in the second phase of the test, on balance, favor a finding that plaintiff's retaliation claim is not reviewable by this court. Plaintiff's claim concerning her transfer is a personnel matter, and the facts alleged by plaintiff do not show that her interest in judicial review of this personnel decision is stronger than the California Army National Guard's interest in making decisions based on military standards and needs. Even if the second factor, i.e., potential injury to plaintiff if judicial review is denied, is viewed as weighing in plaintiff's favor, the third and fourth factors weigh against plaintiff because military discretion and expertise are plainly involved in the personnel decision at issue. Judicial review of such decisions could impede the National Guard

in the performance of its duties, impair its ability to make personnel decisions based on "subjective, though appropriate, criteria of military efficiency," and interfere with military functions. Christoffersen, 855 F.2d at 1444.

"Courts have declined to review a variety of employment actions involving military personnel because, in the military, 'overriding demands of discipline and duty' prevail, demands which do not have a counterpart in civilian life." Mier, 57 F.3d at 749 (quoting Chappell v. Wallace, 462 U.S. 296, 300 (1983)). See Wenger v. Monroe, 282 F.3d 1068, 1075-76 (9th Cir. 2002) (affirming dismissal of a case where an officer in the California Army National Guard sought relief with respect to a flag placed on his personnel file, observing that "we have emphatically denied invitations to review military personnel decisions"); Sandidge v. State of Washington, 813 F.2d 1025, 1026-27 (9th Cir. 1987) (finding that Mindes factors weighed against reviewability of case where a National Guard officer sought revision of a job performance evaluation, as the evaluation involved military discretion and expertise, and judicial review would require significant interference with military functions). When asked to review employment actions taken against members of the military, "'courts must give great deference to the professional judgment of military authorities.'" Christoffersen, 855 F.2d at 1445 (quoting Goldman v. Weinberger, 475 U.S. 503, 507 (1986)). Accordingly, plaintiff's Title VII claim of retaliatory transfer fails to state a claim on which relief may be granted. Defendants' motion to dismiss plaintiff's second claim should also be granted.

The undersigned has carefully considered whether there is any possibility that plaintiff may be able to file a fee-paid complaint in a new action in which she could state cognizable claims that would not suffer from the defects of the complaint filed in this action. In making this assessment, the undersigned has taken into consideration documents filed in plaintiff's related case, in which she has litigated similar claims. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988). See also Klamath-

Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to amend shall be freely given, the court does not have to allow futile amendments). The court concludes that leave to amend would be futile in this instance given the defects noted above and in plaintiff's related case. Accordingly, the undersigned will recommend that defendants' motion to dismiss the complaint be granted pursuant to Rule 12(b)(6) without leave to amend.

CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that the Clerk of the Court shall file and docket in this case the erroneously captioned opposition plaintiff filed in error in her related case, 2:07-cv-1259 JAM DAD PS; the opposition docketed in the related case as Document 45 is plaintiff's opposition to defendants' July 20, 2009 motion to dismiss (Doc. No. 8) in this case; the opposition shall be filed in this case with the August 27, 2009 filing date stamped on the document and shall be linked to defendants' motion to dismiss (Doc. No. 8); and

IT IS RECOMMENDED that:

1. Defendants' July 20, 2009 motion to dismiss for failure to state a claim for relief (Doc. No. 8) be granted;

2. Defendants' July 21, 2009 motion to dismiss on the ground that the allegation of poverty in plaintiff's application to proceed in forma pauperis is untrue (Doc. No. 9) be granted; and

3. This action be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2) and Federal Rule of Civil Procedure 12(b)(6).

These findings and recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven (7) days after being served with these findings and recommendations, any party may file written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be filed

within seven (7) days after the objections are served. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 22, 2010.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1\orders.prose\easterly3038.oah.091109.mtds.gr